COMMONWEALTH vs. PATRICK JEROME WERNER

Hampden.   September 12, 1983. — October 3, 1983.

Present: HALE, C.J., GREANEY, & SMITH, JJ.

*Homicide. Insanity. Evidence,* Insanity. *Practice, Criminal,* Required finding.

At a murder trial, the Commonwealth's proof on the issue of the defendant's responsibility, including lay testimony as to the defendant's propensities prior to the homicide, his conduct in leaving the scene and concealing himself and the murder weapon, his demeanor at a police station, and his ability to comprehend his rights and to furnish the police with a coherent and detailed confession, warranted the judge's denial of the defendant's motion for a required finding of not guilty by reason of insanity, despite the senseless nature of the crime, the defendant's history of mental illness, and testimony of two psychiatrists that he was not criminally responsible.  [689-690]

INDICTMENT found and returned in the Superior Court Department on March 10, 1981.

The case was tried before *Simons, J.*

*Murray Shulman* for the defendant.

*William W. Teahan, Jr.,* Assistant District Attorney, for the Commonwealth.

GREANEY, J.  The defendant was convicted of second degree murder on an indictment charging murder in the first degree for the February 22, 1981, slaying of a young woman at a bus terminal in Springfield.  The defendant's commission of the homicide was not disputed at trial.  The sole issue was the defendant's criminal responsibility.  The jurors, rejecting the defendant's claim that he was not criminally responsible, returned a verdict of guilty of murder in the second degree.  On appeal, the defendant claims that the judge should have granted his motion for a required finding of not guilty by reason of insanity at the close of all

the evidence.   The defendant bases his argument on evidence, including the opinions of two experts, that he suffered from a mental illness when he committed the homicide, and, as a result of the illness, that he lacked substantial capacity to appreciate the wrongfulness of his conduct and substantial capacity to conform his conduct to the requirements of the law.   We affirm the judgment.

On the evidence presented in the Commonwealth's case-in-chief, the jury could have found that the defendant had inflicted multiple stab wounds on the sixteen year old victim who was waiting with two friends to catch a bus at the Peter Pan bus terminal in Springfield.   The attack was unprovoked and resulted in the victim's death.   The jury could also have found that, after the stabbing, the defendant fled the bus terminal and ran over a nearby hill containing railroad tracks; that he secreted the knife used in the assault in a crevice between two railroad ties where it almost eluded discovery by the police; and that he hid in a remote spot to avoid detection.   The jury further could have found that, after his arrest, the defendant was informed of and voluntarily and intelligently waived his Miranda rights; that he spoke with the police for about five minutes, furnishing them with a comprehensible oral statement which detailed the events at the bus station in chronological order; that the substance of his oral confession was repeated to and understood by the defendant; that he was thereafter questioned by the police; that he understood and was responsive to the questions posed by the investigating officers; and that during the entire inquiry he was calm and softspoken and manifested no unusual behavior except for a slight tremor in his hands.   After discussing the crime with the defendant, the police prepared two written statements.   The jury could have found that the first statement was read by the defendant and destroyed at his insistence because he thought it contained irrelevant information which would depict him in an unfavorable light to the prosecutor.   A second written statement was then prepared, read and signed by the defendant.   This statement could have been found to represent

a coherent and reasonably detailed account of the defendant's commission of the crime. Among other things, the second statement explained the defendant's decision to assault the victim, expressed his surprise that the victim, despite her wounds, was able to get up and seek help, outlined his efforts to dispose of the knife and to elude the police, and contained an indentification of the knife found by the police as the weapon he had used in the homicide.

Additional evidence was elicited in the defendant's case from which the jury could have found that the defendant had thought about attacking someone with his knife for two or three days prior to the homicide and had contemplated, but rejected, the commission of a crime against property "since he was not angry at property; he was angry at people."

The defense was based primarily on the testimony of two psychiatrists. Both experts testified that the defendant, in light of the standard governing criminal responsibility, see *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967), was not criminally responsible for his conduct on February 22, 1981, because he suffered from a serious mental illness, schizophrenia of the chronic paranoid type.[1] These doctors predicated their opinions on the defendant's history of mental illness, examination of records of his prior psychiatric hospitalizations, interviews with the defendant and his family, the circumstances of the commission of the crime, and the defendant's description of his mental state before and at the time of the murder. The Commonwealth did not call an expert to testify concerning the defendant's sanity.

1. We reject the Commonwealth's argument that because the defendant's motion for a required finding of not guilty failed to specify insanity as a ground, the question now argued was not preserved below. The entire trial was

---

[1] There was expert testimony that schizophrenia of the chronic paranoid type means schizophrenia of long duration, usually associated with a gradually deteriorating condition. The illness is distinguished from acute schizophrenia which involves short episodes of irrational conduct which may not recur.

intensely focused on the single issue of the defendant's criminal responsibility. We think it was obvious that an alleged lack of sufficient proof of criminal responsibility was the only ground underlying the motion. See *Commonwealth* v. *Lunde,* 390 Mass. 42, 47 n.7 (1983). In these circumstances, waiver of argument on the motion by the defendant's counsel is also of no significance.

2. The case presents a picture much like the one described in *Commonwealth* v. *Lunde, supra.* Here, as in *Lunde,* the defendant does not challenge the denial of his motion for a required finding of not guilty filed at the close of the Commonwealth's case. He concedes that the Commonwealth had, at that juncture, presented sufficient evidence to warrant submission of the case to the jury for determination. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979); *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 239 (1982). Rather, the defendant asserts that the Commonwealth's proof on the issue of criminal responsibility deteriorated between the time the Commonwealth rested and the close of the evidence, requiring a finding that he was not guilty by reason of insanity. The defendant urges that the agreement of the two psychiatrists that he was not criminally responsible, his history of mental illness, and the senseless nature of the crime mandate a required finding of not guilty by reason of insanity.

All of the defendant's arguments were answered by the Supreme Judicial Court in the *Lunde* decision. See also *Commonwealth* v. *Robinson,* 14 Mass. App. Ct. 591, 594-596 (1982). As in *Lunde,* the jury could have properly rejected the opinions of the defendant's experts.[2] *Commonwealth* v. *Lunde, supra* at 47, and cases cited. The evidence of the defendant's propensities prior to the homicide, his conduct in leaving the scene and hiding himself and the knife, his demeanor at the police station, and his ability to

---

[2] Lengthy cross-examination of the defendant's two experts tended to undermine their opinions and could have led the jury, for various reasons, to disregard the opinions or to give them little weight. See *Commonwealth* v. *Lunde, supra* at 49 n.11.

comprehend his rights and to furnish the police with coherent and detailed written confessions[3] which disclosed an ability to differentiate relevant from irrelevant facts, could have led the jury to find with the requisite degree of certainty that the defendant had a sufficient awareness of the legal implications of his conduct to justify his conviction of murder in the second degree.[4] As a consequence, the case is not one in which the Commonwealth's proof rested exclusively on the premise that "a great majority of men are sane." *Commonwealth* v. *Clark*, 292 Mass. 409, 415 (1935). See *Commonwealth* v. *Lunde*, 390 Mass. at 47-48. We conclude that "[t]he lay testimony and the defendant's actions, warranted submitting the issue of the defendant's criminal responsibility to the jury" despite his history of mental illness and the absence of expert proof by the Commonwealth. *Id.* at 49.

*Judgment affirmed.*

---

[3] A pretrial motion to suppress the defendant's confessions was filed, heard, and denied. No claim of error has been raised as to the judge's findings and rulings that the defendant's confessions were voluntary and the product of a rational intellect. At trial, the jury were instructed to determine for themselves whether the defendant's confession was voluntarily made and the product of a rational mind. See *Commonwealth* v. *Harris*, 371 Mass. 462, 469-470 (1976); *Commonwealth* v. *Brady*, 380 Mass. 44, 49 (1980).

[4] The jury were properly instructed under the principles set forth in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980), that they could consider the defendant's mental illness in determining the degree of murder and, in particular, the question of premeditation.