NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11601

COMMONWEALTH  vs.  ADAM SIMPKINS.


Suffolk.     October 9, 2014. - January 21, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly,
& Hines, JJ.



Homicide.  Practice, Criminal, Required finding, Double
     jeopardy.  Supreme Judicial Court, Superintendence of
     inferior courts.  Accessory and Principal.  Firearms.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on October 7, 2013.

     The case was reported by Gants, J.


     Robert L. Sheketoff (Kirsten M. O'Brien with him) for the
defendant.
     Cailin M. Campbell, Assistant District Attorney (Mark T.
Lee, Assistant District Attorney, with her) for the
Commonwealth.


     SPINA, J.  In 2011, the defendant, Adam Simpkins, was

indicted on charges of murdering Cordell MacAfee, armed assault

with intent to murder Christopher Jones, accessory after the

fact to murder, and unlawful possession of firearms.  The jury

found the defendant guilty of unlawful possession of firearms and accessory after the fact. The jury were unable to reach a verdict on the indictments charging murder and armed assault with intent to murder, and the judge declared a mistrial as to those indictments.[1] The Commonwealth requested that sentencing on the indictments on which the defendant was found guilty be postponed until he could be retried on the indictments that were mistried. The defendant, in turn, moved to dismiss the mistried indictments on two theories of double jeopardy, namely, (1) his motion for required findings of not guilty at the close of the Commonwealth's case should have been allowed, and (2) the conviction of accessory after the fact has collateral estoppel effect barring retrial of the indictments alleging murder and armed assault with intent to murder. The defendant's motion was denied. The defendant filed this petition under G. L. c. 211, § 3, alleging that the denial of his motion to dismiss violated principles of double jeopardy and that the Commonwealth, having

---

[1] The defendant was tried jointly with three other men. At the conclusion of the Commonwealth's case-in-chief, motions for required findings of not guilty were allowed as to all charges against two codefendants, but denied as to motions for required findings of not guilty filed by the defendant and the third codefendant. The third codefendant did not file a written motion for a required finding of not guilty, but his oral motion was denied. The jury were unable to reach a verdict with regard to the charges against the third codefendant (the only one the Commonwealth had identified as a shooter), and the judge declared a mistrial as to him. Although not a matter of record, we are informed that the third codefendant was acquitted at his retrial.

convicted the defendant of being an accessory after the fact, was estopped as a matter of law from trying him as a principal for the same crime. See Costarelli v. Commonwealth, 374 Mass. 677, 679-680 (1978). The single justice reserved and reported the case, without decision, to the full court. We hold that the defendant's motion for required findings of not guilty as to the indictments charging murder and armed assault with intent to murder should have been allowed. Because of this holding, we need not address the issue of collateral estoppel.

1. Facts. We recite the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). On May 7, 2010, two men in matching cream-colored hooded sweatshirts shot at MacAfee and Jones, his brother, as the two sat on the front porch of a home on Roseland Street in the Dorchester section of Boston. One eyewitness testified that the defendant was not one of the shooters. Before the two men began shooting, one asked MacAfee and Jones, "What's up now?" MacAfee was struck by two bullets of differing calibers, once in the neck and once in the stomach. Jones was not injured. The shooters fled in the direction of Dorchester Avenue and then to the defendant's residence on St. Mark's Road.

MacAfee did not die immediately from his wounds but made his way to Dorchester Avenue, where he collapsed in the street. Police quickly responded and canvassed the neighborhood for the

shooters. Their investigation soon centered on the defendant's residence, where an eyewitness indicated the shooters had entered. Police surrounded the house and maintained a watch for the next several hours. There is no evidence of any communication between the occupants of the house and police. The defendant was the first to emerge from the house, followed by his three codefendants and one other person shortly thereafter.

One week prior to the shooting, MacAfee and Jones had been involved in an incident with a group of men at a parking lot in another section of Dorchester. MacAfee and Jones had traveled separately to this location. Jones arrived first, and a group of men that included the defendant approached him. An unspecified member of the group asked Jones, "What's up?" Jones responded, "Ain't shit. What's up?" At this point, MacAfee arrived and asked if there was a problem. An unspecified member of the group replied that there was not. The encounter ended with the group getting into a white Ford Taurus with out-of-State license plates.

Shortly before the shooting on May 7, 2010, while sitting on the porch with MacAfee, Jones noticed a white Ford Taurus travel north on Dorchester Avenue, turn onto King Street, and eventually park on St. Mark's Road. This vehicle was the same one present at the encounter one week earlier. Still prior to

the shooting, a group of men then got out of the Taurus and entered the defendant's residence on St. Mark's Road. During the investigation, the police recovered a set of fingerprints that matched those of the defendant from the left rear passenger window of a white Ford Taurus with a New Hampshire registration parked on St. Mark's Road. The registered owner of this vehicle was the brother of the one codefendant specifically accused of being one of the shooters. That codefendant was a frequent visitor at the defendant's house.

Based on eyewitness testimony, the jury could have found that the defendant was among the men who got out of the white Ford Taurus and went into the defendant's home before the shooting, and that the defendant was not one of the shooters. The shooters were seen in the area prior to the arrival of the Taurus. The defendant assisted in concealing the firearms used in the shooting.

2. Discussion. "[B]ecause double jeopardy principles prohibit trying a defendant twice for the same offense, . . . the defendant is entitled to a review of the legal sufficiency of the evidence before another trial takes place" when the defendant has moved for a required finding of not guilty and a judge declares a mistrial after the jury fail to agree on a verdict in the first trial (citations omitted). Berry v. Commonwealth, 393 Mass. 793, 798 (1985). We view the evidence

presented in the Commonwealth's case-in-chief in the light most favorable to the Commonwealth and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Latimore, supra.

At trial, the Commonwealth did not pursue the theory that the defendant was one of the shooters.  Instead, the Commonwealth sought to prove the defendant's guilt under a theory of aiding and abetting the shooter.  Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009).  In order to convict the defendant, the Commonwealth had to prove that the defendant knowingly participated in the commission of the crime charged, and that the defendant had or shared the required criminal intent.  Id.

The Commonwealth argues that the incident between the victim and the group that included the defendant one week before the shooting clearly can be linked to the shooting itself because of the presence of the white Ford Taurus in both places and the use of the words "What's up?" and "What's up now?" separately during the incidents.  Additionally, the Commonwealth argues that the temporal proximity of the arrival of the Taurus on St. Mark's Road to the shooting, when coupled with the flight of the shooters to the defendant's home, lends weight to the conclusion that the defendant assisted in the planning of the

enterprise. We disagree that the evidence reflects the essential elements of the crime here at issue.

The Commonwealth claims that the incident the week prior to the shooting and the presence of the white Ford Taurus at both times constitute some evidence of motive and thus demonstrate the requisite intent sufficient to survive a motion for a required finding of not guilty. We disagree. There is insufficient evidence about the nature of the encounter one week before the shooting to imply an intent to kill or even a motive to kill on the part of anyone involved. Even were we to infer from the presence of the Taurus that the shooters had been present at that earlier encounter, we still would lack any evidence demonstrating that they had any contact at all with the defendant prior to the shooting.

Moreover, even if the shooters were referring to the encounter from the prior week when one asked, "What's up now?" that is not enough to implicate the defendant in the killing. Similarly, the presence of the white Ford Taurus at both incidents may create some causal link between the two but, even were we to assume that the defendant rode in the vehicle both times, nothing further suggests knowing participation by the defendant in the shooting itself or the planning thereof. Instead, we are asked to draw an inference that the defendant aided and abetted the shooters prior to the shooting because the

shooting occurred after the defendant arrived home in the Ford Taurus and then assisted in concealing the murder weapons by putting them inside a wall in his home.  Such an inferential leap asks too much.  Compare Commonwealth v. Swafford, 441 Mass. 329, 339 (2004).

The defendant's role in hiding the murder weapons occurred after the commission of the crimes and explains his indictment charging him with being an accessory after the fact.  The Commonwealth presented no fact which could prove beyond a reasonable doubt that such involvement was contemplated prior to the shooting.

Seizing on our language in Zanetti, 454 Mass. at 470 (Appendix), that "aid or assistance . . . in escaping, if such help becomes necessary" can suffice to impose criminal liability, the Commonwealth urges that the flight of the shooters to the defendant's home and the disposal of the weapons are proof that the defendant gave aid and assistance to the shooters in their escape.  Id. at 467.  That the defendant gave aid and assistance to the shooters in their escape is true, but this conduct was correctly charged as accessory after the fact, not as "aiding and abetting."  The Commonwealth's argument parses our holding incorrectly for purposes of imposing liability under Zanetti for the crime of murder.  In the jury instruction provided in that case, we said liability can be

imposed on participation in a crime when the conduct "take[s] the form of agreeing to stand by at, or near the scene of the crime to act as a lookout, or to provide aid or assistance in committing the crime, or in escaping, if such help becomes necessary" (emphasis added).  Id. at 470 (Appendix).  We went on to state:  "Mere knowledge that a crime is to be committed is not sufficient to convict the defendant. . . .  Mere presence at the scene of the crime is not enough to find a defendant guilty.  Presence alone does not establish a defendant's knowing participation in the crime, even if a person knew about the intended crime in advance and took no steps to prevent it. . . .  It is not enough to show that the defendant simply was present when the crime was committed or that he . . . knew about it in advance."  Id.

The close proximity of the shooters to the defendant's home prior to the murder and their flight simply do not support a finding beyond a reasonable doubt of any express or implied agreement by the defendant before or during the commission of the crime to act in concert during or after the shooting.  Accordingly, as a matter of law, the Commonwealth did not satisfy its burden of proof.  The defendant's motion for required findings of not guilty on the charges of murder and assault with intent to murder should have been allowed.

3.  <u>Conclusion</u>.  Because we hold that the motion for required findings of not guilty was improperly denied, we do not consider the defendant's double jeopardy claims.  We reverse the denial of the motion for required findings of not guilty as to the charges of murder and assault with intent to murder, and we direct entry of verdicts of not guilty as to those indictments.  The case is remanded to the Superior Court for sentencing on the indictments alleging illegal possession of firearms and accessory after the fact to murder.

<u>So ordered</u>.