NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-599

COMMONWEALTH

vs.

ALEJANDRO SANTANA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In the early morning hours of December 30, 2020, the victims, a husband and wife, were awoken by a noise inside their home.  The wife, assuming it was their cat, got out of bed and saw two individuals inside her home walking towards her bedroom wearing ski masks and holding what appeared to her to be rifles. One of the intruders yelled at the victims and pointed a gun at the wife's head.  The husband charged at the other masked individual.  The intruders beat both victims with their guns. The husband was able to push the bedroom door shut, and the wife called 911.  After the encounter, the husband found a shotgun

_____

[1] As is our custom, we spell the defendant's name as it appears in the indictments.

shell under a door in the area where he had fought with the two intruders.

The defendant was convicted by a jury in the Superior Court of entering a dwelling in the nighttime with the intent to commit a felony while armed in violation of G. L. c. 266, § 18, and of receiving a stolen motor vehicle in violation of G. L. c. 269, § 28 (a). The defendant contends that the judge erred in the admission of certain statements made by the coventurers prior to and following the armed entry into the victims' home. The defendant also claims error in the denial of his motion for a required finding of not guilty. We affirm.

Discussion. 1. Statements of joint venturers. The defendant takes issue with the admission of certain statements made by participants in the crime both before and after the armed entry into the victims' home. The first statement, which was not objected to, was made by an unidentified member of the group before the crime occurred. The group was discussing a house, and the plan was "to go into a house to get some money, to make some money." The defendant was participating in that conversation. The second and third statements, which were timely objected to, occurred as the group was leaving the crime scene. One coventurer, Daniel Resende, said that he ended up "involving himself in a fight with the old man" and another

2

coventurer, Daniel Pedrosa, said that he "pulled the trigger but the weapon was locked."

It is well settled that an exemption from the rule against hearsay exists "whereby statements by joint venturers are admissible against each other if the statements are made both during the pendency of the cooperative effort and in furtherance of its goal" (quotation and citation omitted).  Commonwealth v. Samia, 492 Mass. 135, 142 (2023).  See Mass. G. Evid. § 801(d)(2)(E) (2021).  In order to admit the statement of a joint venturer, "the judge must make a preliminary determination, based on a preponderance of the evidence, other than the out-of-court statement itself, that the statement was made during, and in furtherance of, a joint venture between the declarant and the defendant" (quotation and citation omitted).  Commonwealth v. Robertson, 489 Mass. 226, 230-231 (2022).  If the judge admits the statements, the jury is then instructed that it may consider the statements but only if they find that a joint venture existed independent of the statements themselves, and that the statements were made in furtherance of the joint venture.  See Commonwealth v. Rakes, 478 Mass. 22, 37 (2017).  "We review a judge's evidentiary ruling for abuse of discretion."  Commonwealth v. Brea, 488 Mass. 150, 159 (2021).

3

The defendant contends that the judge erred in admitting the statements because there was insufficient evidence that the statements were made during a cooperative effort between the defendant and the declarants. The defendant also contends that the second and third statements, made after the crime occurred, were narrative in nature and not made in furtherance of any criminal venture. We are not persuaded by either of these contentions.

The Commonwealth presented enough evidence, apart from the statements themselves, that the defendant was part of a joint venture to rob the victims' home. The defendant was friends with the participants of the crime -- this was not a group of strangers that the defendant happened to come upon who were planning to break into a home to obtain cash. The evening began at the defendant's home, and the defendant and his friends were told that they all needed to leave. This prompted the defendant and his friends to canvas the area in search of a car and money. A short time later, the members of the group returned to the defendant's home with a stolen van and a weapon. The group then pooled their money to rent a hotel room. Once inside the hotel room, the defendant participated with others in a conversation about going into a home and getting money. It was during this conversation that the defendant moved the stolen van away from

4

the hotel room to the far corner of the parking lot and returned to the hotel room wearing a face mask.

Next, the defendant drove with the others to the victims' home where two of the participants, Daniel Resende and Daniel Pedrosa, exited the van holding shotguns and wearing masks. After the rest of the group headed toward the victims' home, the defendant exited the van, walked up the street, and returned. Shortly thereafter, several members of the group came back to the van, running from the direction of the house. It was at this time the second set of challenged statements were made. Upon entering the van, Resende told the driver to leave quickly. Resende and Pedroso then explained on the ride back that there was a confrontation with an "old man" and that, during the confrontation, Pedrosa attempted to fire his gun.

After the group returned to the hotel, the defendant left and returned a short while later with a truck,[2] which he parked next to the van. Finally, less than twelve hours after the armed entry, the defendant was stopped by the police driving the truck. During the stop, police found two shotguns (one of which later was discovered to contain deoxyribonucleic acid [DNA]

---

[2] The owner of the truck testified that the truck was taken, without his permission, from his driveway that night. He also testified that he did not know the defendant or any of the coventurers.

5

matching the husband), shotgun ammunition, and a bag of spent shotgun shells inside the cab of the truck.

Given the totality of this evidence, the judge acted within his discretion in determining, by a preponderance of the evidence, that the defendant was part of a joint venture to rob the victims' home. There is no dispute that the first statement, regarding going into a home to get cash, was made in furtherance of the joint venture, and there was testimony indicating the defendant participated in that conversation. Thus, there was no error, much less a substantial risk of a miscarriage of justice, in admitting the first statement. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). As to the second and third statements, made after the armed entry, those statements were also made in furtherance of the crime. See Commonwealth v. Winquist, 474 Mass. 517, 523 (2016) ("our appellate courts thus far have deemed admissible statements made by joint venturers during the so-called concealment phase of their criminal enterprise when such phase is relatively close in time to the commission of the crime"). The statements by Resende and Pedroso were made while the group was leaving the crime scene and established the need to get rid of the evidence (the shotguns). Therefore, the judge likewise did not err in the admission of the second and third statements.

6

2.  Sufficiency of the evidence.  a.  Armed entry.  The
Commonwealth proceeded at trial on the theory that the defendant
aided and abetted the armed entry into the victims' home and
thus was guilty of the crime as a joint venturer.  The defendant
argues that the evidence was insufficient to convict him of
either armed entry into a dwelling with the intent to commit a
felony or receiving a stolen motor vehicle.  In reviewing the
denial of a motion for a required finding of not guilty, we must
determine "whether, after viewing the evidence in the light most
favorable to the [prosecution], any rational trier of fact could
have found [the defendant] to be criminally responsible beyond a
reasonable doubt."  Commonwealth v. Cullen, 395 Mass. 225, 228
(1985).  We have said that "[i]nferences drawn from
circumstantial evidence need not be inescapable or necessary, so
long as they are reasonable, possible and not unwarranted
because too remote. . ." (quotations and citation omitted).  Id.
at 230.

The elements of the crime of entry into a dwelling during
the nighttime while armed with the intent to commit a felony are
as follows:  (1) the premises entered was the dwelling of
another; (2) the defendant entered into the dwelling; (3) the
defendant was armed with a dangerous weapon; (4) the defendant
had the intent to commit a felony; and (5) the entry occurred in

7

the nighttime.  See G. L. c. 266, § 18.  The defendant does not challenge that there was sufficient evidence that Pedroso and Resende, the two armed intruders, committed the armed entry. Rather, he argues that there was insufficient evidence that he aided and abetted the crime.  To establish the defendant's guilt as a joint venturer to the armed entry, the Commonwealth must prove "beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009), abrogated in part on other grounds by Commonwealth v. Britt, 465 Mass. 87, 99 (2013).  We note that a defendant's presence at the scene of the crime, general knowledge that a crime will be committed, or association with the perpetrators of the crime, do not by themselves sufficiently demonstrate a joint venture.  See Commonwealth v. Caswell, 85 Mass. App. Ct. 463, 472 (2014). Rather, the Commonwealth must introduce "additional evidence which implicates the defendant in the crime."  Commonwealth v. Sepheus, 468 Mass. 160, 167 (2014), quoting Commonwealth v. Saez, 21 Mass. App. Ct. 408, 411 (1986).  This evidence may include proof that codefendants acted in a "coordinated fashion," Commonwealth v. McCray, 93 Mass. App. Ct. 835, 843 (2018), or that the defendant "agree[d] to stand by at, or near

8

the scene of the crime to act as a lookout, or to provide aid or assistance in committing the crime, or in escaping, if such help [became] necessary" (citation omitted).  Commonwealth v. Simpkins, 470 Mass. 458, 462 (2015).

Here, examining as we must the evidence in the light most favorable to the Commonwealth, for the reasons stated above, there was sufficient evidence for a jury to find beyond a reasonable doubt that the defendant knowingly and intentionally participated in the armed entry into the victims' home.  The evidence, along with reasonable inferences therefrom, showed that the defendant and others planned the armed entry into the victims' home.  The planning for the crime began when the defendant and his friends were told that they needed to leave his home.  Thus, the group all shared a common motive -- the need for quick cash.  The defendant and others in the group went into the Worcester area in search of a car and money and returned later that evening with a stolen van and a weapon.  The group pooled their money and rented a hotel room, where the defendant participated in the plan to break into a home and get money.  In fact, during the planning phase of the crime, the defendant took the affirmative step of moving the stolen van away from the hotel room to the far corner of the parking lot, presumably to distance the group from the stolen van.  When he

returned to the hotel room, the defendant was wearing a face mask.  Next, the defendant left with the group in the stolen van, which contained two shotguns.  Two of the participants exited the van with the shotguns in their arms, and the defendant exited the van shortly thereafter and walked up and down the street.  After the crime, the defendant left the hotel room and returned with another stolen vehicle (the truck).  The defendant, wearing rubber gloves, was stopped by the police driving the stolen truck and two shotguns were found inside.  This evidence was more than sufficient for a rational jury to find the defendant participated in the planning of the armed entry into the victims' home, in its execution by acting as a lookout, and in the disposal of the evidence.

b.  Receiving a stolen motor vehicle.  The defendant claims that there was insufficient evidence to establish that he knew that he was in possession of a stolen vehicle.  The crime of possession of a stolen motor vehicle under G. L. c. 266, § 28 (a), requires that "(1) the motor vehicle is stolen; (2) the defendant possessed the motor vehicle; and (3) the defendant knew that the motor vehicle was stolen."  Commonwealth v. Aponte, 71 Mass. App. Ct. 758, 760 (2008).  The defendant claims that there was insufficient evidence of the third element, knowledge.  Again, we disagree.

In the light most favorable to the Commonwealth, the jury could have found that, during the evening of December 29, 2020, the defendant and his friends were told to leave the defendant's home and subsequently went out to find money and a car. The group, including the defendant, were in a stolen van a few hours later. In the early morning hours of December 30th, the defendant was driving his own vehicle when police stopped him for driving without a valid license and towed his vehicle. Less than two hours later, the defendant returned to the hotel in a truck, taken without the owner's permission. That same afternoon, police once again stopped the defendant as he was exiting the driver's seat of the stolen truck, and he was wearing black rubber nitrile gloves. When questioned by police, the defendant said that a friend gave him the truck but that he could not tell them the name of his friend. During further questioning about driving a stolen truck with guns and ammunition inside, the defendant acknowledged that the truck was stolen and only denied knowing that the guns and ammunition were present in the stolen truck.

The evidence was more than sufficient to support the defendant's conviction of receiving a stolen motor vehicle.

Judgments affirmed.

By the Court (Meade, Neyman & Walsh, JJ.[3]),

*Paul Little*

Clerk

Entered:  December 9, 2025.

---

[3] The panelists are listed in order of seniority.