COMMONWEALTH *vs.* L. A. L. CORPORATION[1] & others.[2]

Hampden. March 2, 1987. — August 17, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Dismissal. *Alcoholic Liquors,* Sale to minor. *Corporation,* Criminal responsibility, Close corporation. *Agency,* Scope of authority or employment.

In a criminal case, the statements of agreed facts submitted by the parties were sufficient for determination of the substantive issues under the procedure contemplated by Mass. R. Crim. P. 13 (c) (2). [738-739]

Discussion of the legal standards applicable with respect to the imposition of criminal liability on a corporation for the conduct of its servants or agents. [740-743]

The legal standards for determining the criminal responsibility of corporations for the criminal acts of employees were held to be the same for close corporations as for large publicly-held corporations. [743-744]

Evidence in criminal cases in the form of statements of agreed facts that the defendants, close corporations, were licensed to sell alcoholic beverages, that on specified dates a minor purchased an alcoholic beverage from a bartender employed by each defendant at its licensed premises, that none of the minors was asked for identification, and that in each instance the sale by the bartender violated G. L. c. 138, § 34, was sufficient to warrant guilty findings where the individual bartenders could be found to have been engaged in the sphere of corporate business they were authorized to conduct and to have been acting for the benefit of their employers when they sold alcoholic beverages to minors. [744]

COMPLAINTS received and sworn to in the Springfield Division of the District Court Department on January 21, 1986.

Motions to dismiss were heard by *George Bregianes,* J., on statements of agreed facts.

---

[1] Doing business as The Ranch House.

[2] Regal Beagle Lounge, Inc., R & M Lounge of Springfield, Inc. (d/b/a Henry VIII), L.W.W. Co., Inc. (d/b/a Bonnie & Clyde).

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harry P. Carroll,* Deputy City Solicitor (*Richard T. Egan,* City Solicitor, & *John A. Rasmussen* with him) for the Commonwealth.

*James M. Smith* for the defendants.

O'CONNOR, J. This case requires us to consider the circumstances in which a close corporation may be criminally liable for the criminal acts of its employee. Here, the defendant corporations, which we assume to be close corporations, as explained below, are charged in the District Court with violating G. L. c. 138, § 34 (1984 ed.), which provides in material part that "[w]hoever makes a sale or delivery of any alcoholic beverages or alcohol to any person under twenty-one years of age . . . shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months, or both."

The defendant, L. A. L. Corporation, doing business as The Ranch House, filed a motion to dismiss the complaint against it and an affidavit and a memorandum in support thereof. When that motion was heard, the parties orally agreed, apparently with the District Court judge's approval, that L. A. L. Corporation's motion would apply to the complaints against all the defendants. The motion was denied at first, but, after the parties filed statements of agreed fact, it was allowed as to all the defendants. The Commonwealth appealed, and we transferred the case to this court on our own motion. We reverse, and remand the case to the District Court.

By their terms, the agreed statements apply only to the "first instance" bench trial. We understand that the parties' intention was to test, without going through one or more trials, whether the facts provable by the Commonwealth were legally sufficient to support convictions of the defendants. Such a procedure is consistent with Mass. R. Crim. P. 13 (c) (2), 378 Mass. 873 (1979), which provides that "[a] defense . . . which is capable of determination without trial of the general issue shall be raised before trial by motion." Of course, "where dismissal is requested because of the claimed insufficiency of the evidence of guilt, it cannot be ordered unless the Commonwealth agrees

to join in the affidavit procedure [described in *Commonwealth v. Brandano,* 359 Mass. 332, 337 (1971)] or in a stipulation of the facts. A pretrial order or judgment of dismissal for the claimed insufficiency of the Commonwealth's evidence cannot be sustained in any case where the Commonwealth fail[s] or refuse[s] to stipulate that the appellate record contains a statement of all the Commonwealth's contemplated evidence." (Footnote omitted.) *Rosenberg* v. *Commonwealth,* 372 Mass. 59, 63 (1977). *Commonwealth* v. *Hare,* 361 Mass. 263, 270 (1972) ("Nothing we hold today prevents the parties from testing the sufficiency of the evidence by stipulation or by some other proceeding, agreeable to the parties, which avoids a long and costly trial"). But here it is apparent that the parties have attempted to make use of the procedure contemplated by rule 13 (c) (2) and those cases, and we think they have done so satisfactorily. Therefore, although the parties have not expressly agreed that the "appellate record contains . . . all the Commonwealth's contemplated evidence," we consider that agreement to be implicit, and we take up the substantive issue presented.

The statements of agreed fact provide that the defendants are licensed to sell alcoholic beverages; that on specified dates a minor purchased an alcoholic beverage from a bartender employed by each defendant at its licensed premises; that none of the minors was asked for identification; and that in each instance the sale by the bartender violated G. L. c. 138, § 34.

L. A. L.'s affidavit in support of its motion to dismiss stated that L. A. L. Corporation is a close corporation whose stock is owned by only two people; that the corporation's manager, officers, and directors were not directly or indirectly involved in the illegal sale of liquor; that the corporation does not and did not approve of the sale of liquor to minors and "has steadfastly maintained and enforced a policy of prohibiting its employees from making sales of liquor to minors." The record does not show that the Commonwealth agreed to the truth of the affidavit, and nothing in the Commonwealth's brief suggests its acceptance of the affidavit as true. Therefore, we do not consider the affidavit. The defendant is not harmed,

however. If the agreed facts are insufficient to warrant a conviction of a close corporation, as the defendants argue, then L. A. L. Corporation and the other defendants are entitled to acquittal because the Commonwealth has failed to show that they are other than close corporations. The burden is on the Commonwealth to prove all the essential elements of the crimes charged. We conclude, however, that whether the defendant corporations are close corporations makes no difference, and that convictions are warranted on the facts set forth in the agreed statements.

The root of the dispute between the Commonwealth and the defendants is their difference of opinion concerning the reach of *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). The defendants argue that the principles announced in that case apply only to "endocratic" corporations, that is, to "large, publicly-held corporation[s], whose stock is scattered in small fractions among thousands of stockholders." *Commonwealth* v. *Beneficial Fin. Co.*, *supra* at 276 n.58, quoting Note, Increasing Community Control Over Corporate Crime — A Problem in the Law of Sanctions, 71 Yale L. J. 280, 281 n.3 (1961). On the other hand, the Commonwealth contends that the principles announced in *Beneficial Fin. Co.* apply to all corporations including close corporations. We agree with the Commonwealth.

In *Beneficial Fin. Co.*, after concluding that the evidence was sufficient to establish that certain employees of the defendant corporations were parties to a conspiracy to bribe public officials, the court turned to the question whether there was sufficient evidence to support findings that the corporations were also parties to the conspiracy. In that regard, the court discussed "the applicable legal standards concerning the extent to which a corporation may be held criminally responsible for the acts of its directors, officers and agents." *Id.* at 253. Although the defendant corporations in that case were indeed endocratic, the discussion clearly was not limited to such corporations.

The *Beneficial Fin. Co.* defendants argued, as the defendants argue here, that "a corporation should not be held criminally liable for the conduct of its servants or agents unless such conduct was performed, authorized, ratified, adopted or tolerated by the corporations' directors, officers or other 'high managerial agents' who are sufficiently high in the corporate hierarchy to warrant the assumption that their acts in some substantial sense reflect corporate policy." *Id.* at 254. That is the standard adopted by the Model Penal Code approved in May, 1962. *Id.* We rejected the defendants' contention, and approved of the judge's jury instructions. We repeated material portions of those instructions as follows: "[T]he Commonwealth must prove beyond a reasonable doubt that there existed between the guilty individual or individuals and the corporation which is being charged with the conduct of the individuals, such *a relationship that the acts and the intent of the individuals were the acts and intent of the corporation* . . . . How is that to be shown? How is the jury to determine whether the Commonwealth has proved that? First[,] . . . the Commonwealth does not have to prove that the individual who acted criminally was expressly requested or authorized in advance by the corporation to do so, nor must the Commonwealth prove that the corporation expressly ratified or adopted that criminal conduct on the part of that individual or those individuals. *It does not mean that the Commonwealth must prove that the individual who acted criminally was a member of the corporation's board of directors, or that he was a high officer in the corporation, or that he held any office at all.* If the Commonwealth did prove that an individual for whose act it seeks to hold a corporation criminally liable was an officer of the corporation, the jury should consider that. *But more important than that, it should consider what the authority of that person was as such officer in relation to the corporation.* The mere fact that he has a title is not enough to make the corporation liable for his criminal conduct. The Commonwealth must prove that the individual for whose conduct it seeks to charge *the corporation criminally was placed in a position by the corporation where he had*

*enough power, duty, responsibility and authority to act for and in behalf of the corporation to handle the particular business or operation or project of the corporation in which he was engaged at the time that he committed the criminal act with power of decision as to what he would or would not do while acting for the corporation, and that he was acting for and in behalf of the corporation in the accomplishment of that particular business or operation or project, and that he committed a criminal act while so acting. . . . Now, this test doesn't depend upon the power, duty, the responsibility, or the authority which the individual has with reference to the entire corporation business. The test should be applied to his position with relation to the particular operation or project in which he is serving the corporation."* (Emphasis in original.) *Id*. at 255-257.

We noted in *Beneficial Fin. Co.* that the judge's instructions had "focus[ed] on the authority of the corporate agent in relation to the *particular* corporate business in which the agent was engaged" (emphasis in original), while "[t]he Code seems to require that there be authorization or reckless inaction by a corporate representative having some relation to framing corporate policy, or one 'having duties of such responsibility that his conduct may fairly be assumed to represent the policy of the corporation.'" *Id*. at 257. Also, we observed that "the judge's standard [was] somewhat similar to the traditional common law rule of respondeat superior" with the "added" requirement that "the conduct for which the corporation is being held accountable be performed *on behalf of the corporation*" (emphasis in original). *Id*. at 258, 273. See *Wang Laboratories, Inc*. v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986) ("conduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . .; if it occurs substantially within the authorized time and space limits . . . ; and if it is motivated, at least in part, by a purpose to serve the employer" [citations omitted]).

In *Beneficial Fin. Co.*, we carefully distinguished between cases involving a human principal and those involving a corporate principal. We recognized that in cases "involving a human principal . . . it is fundamental to our criminal jurisprudence

that for more serious offenses guilt is personal and not vicarious," but we concluded that "the very nature of a corporation as a 'person' before the law renders it impossible to equate the imposition of vicarious liability on a human principal with the imposition of vicarious liability on a corporate principal. 'A corporation can only act through its agents. . . . [C]orporate criminal liability is necessarily vicarious.' Note, Criminal Liability of Corporations for Acts of Their Agents, 60 Harv. L. Rev. 283 [1946]." *Id.* at 263-264.

Also, in that case, we reviewed Massachusetts decisions and decisions in other jurisdictions. We quoted with approval the statement of Judge Learned Hand in *United States* v. *Nearing,* 252 F. 223, 231 (S.D.N.Y. 1918), that "the criminal liability of a corporation is to be determined by the kinship of the act to the powers of the officials, who commit it" (emphasis omitted), *id.* at 269, and we characterized *Egan* v. *United States,* 137 F.2d 369, 379 (8th Cir.), cert. denied, 320 U.S. 788 (1943), *C.I.T. Corp.* v. *United States,* 150 F.2d 85 (9th Cir. 1945), and *United States* v. *Nearing, supra,* as "strong precedent for the rule that a corporation is criminally liable for the acts of an agent who has been vested with the authority to act on behalf of the corporation in the sphere of corporate business in which he commits the criminal act." *Id.* at 270. We said that "[j]uxtaposition of the traditional criminal law requirement of ascertaining guilt beyond a reasonable doubt (as opposed to the civil law standard of the preponderance of the evidence), with the rule of respondeat superior, fully justifies application of the standard enunciated by the judge to a criminal prosecution against a corporation for a crime requiring specific intent." *Id.* at 273.[3] Nowhere in any of the statements herein quoted from our opinion in *Beneficial Fin. Co.*, or elsewhere in that opinion, is there an explicit or implicit limitation to endocratic corporations of the announced standards for determining the criminal

---

[3] All the more so, such juxtaposition justifies the same standard for a crime not requiring criminal intent (malum prohibitum). In *Beneficial Fin. Co.*, the defendants argued, although incorrectly, that the cases in other jurisdictions applying a respondeat superior theory of criminal liability to corporations were cases in which intent was not an element of the crime.

responsibility of corporations for the criminal acts and, where relevant, the criminal intentions of employees. It is true that the *Beneficial Fin. Co.* case involved only endocratic corporations, and it is also true that the opinion contains language to the effect that the Model Penal Code rule is ineffective to deal with endocratic corporations, and that the respondeat superior rule is especially well suited to such cases, but that is not to say that the rule is or should be so limited. Furthermore, no sound reason has been advanced for prescribing the Model Penal Code rule in cases involving close corporations, and a "somewhat more flexible standard," see *Beneficial Fin. Co.* at 255, in cases involving endocratic corporations. On the contrary, sound public policy is served by a rule providing for the criminal liability of any corporation for criminal conduct, performed for its benefit, by its agent authorized to act for the corporation in relation to the particular sphere of corporate business in which the agent was engaged when the criminal conduct took place. We conclude, therefore, that the evidence in this case, in the form of statements of agreed fact, was sufficient to warrant guilty findings against the defendants. The individual bartenders could be found to have been engaged in the sphere of corporate business they were authorized to conduct and to have been acting for the benefit of their employers when they sold alcoholic beverages to minors. Accordingly, we remand this case to the District Court for further proceedings consistent with this opinion.

*So ordered.*