## COMMONWEALTH *vs.* LIFE CARE CENTERS OF AMERICA, INC.

Middlesex. March 1, 2010. - May 19, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Homicide. Corporation,* Criminal responsibility. *Nursing Home.*

This court concluded that a corporation could not be convicted of involuntary manslaughter, based on a theory of corporate criminal liability established by aggregating the knowledge and actions of multiple employees that were at worst merely negligent (i.e., a nursing home employee's removal, from a patient's medical chart, of a doctor's order that the patient wear a security bracelet; the knowledge of various employees that the patient was supposed to wear a security bracelet and tended to attempt to leave the nursing home; the knowledge of a nursing supervisor that the security bracelet order had been removed from the patient's chart and her failure to have the order reentered on the chart; and the failure of a substitute nurse to check that the patient was wearing the security bracelet), in the absence of evidence that at least one employee acted, or failed to act, with the requisite mental state of wanton or reckless conduct. [831-833]

This court concluded that a corporation could not be convicted of neglect of a resident of a long-term care facility, in violation of G. L. c. 265, § 38, based on a theory of corporate criminal liability established by aggregating the knowledge and actions of multiple employees that were at worst merely negligent, in the absence of evidence that at least one employee committed abuse, mistreatment, or neglect while acting with the requisite mental state of knowing and wilful conduct. [833-837]

INDICTMENTS found and returned in the Superior Court Department on June 15, 2007.

Questions of law were reported by *Thomas A. Connors,* J., to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.

*Don Howarth,* of California (*Suzelle M. Smith,* of California, *R. Matthew Rickman, & Alathea E. Porter* with him) for the defendant.

*Randall E. Ravitz,* Assistant Attorney General, for the Commonwealth.

The following submitted briefs for amici curiae:

*Kelly Bagby & Michael Schuster*, of the District of Columbia, for AARP & others.

*Scott Harshbarger & Amy Crafts* for Massachusetts Senior Care Association & another.

*Ben Robbins & Martin J. Newhouse* for New England Legal Foundation & others.

*Harold J. Bressler & Ila S. Rothschild*, of Illinois, *& Marc C. Laredo* for The Joint Commission.

*Max D. Stern & Alexandra H. Deal* for Massachusetts Association of 766 Approved Private Schools.

*John J. Barter* for Professional Liability Foundation, Ltd.

COWIN, J. A resident of the Life Care Center of Acton nursing home (nursing home), a long-term care facility, died in 2004 from injuries sustained when she fell down the front stairs while attempting to leave the facility in her wheelchair. The resident was able to leave the facility because she was not wearing a prescribed security bracelet that both set off an alarm and temporarily locked the front doors if the resident approached within a certain distance of those doors. The defendant, Life Care Centers of America, Inc., a corporation that operates the nursing home, was indicted for involuntary manslaughter and neglect of a resident of a long-term care facility.[1]

Prior to trial, the prosecutor stated in a bill of particulars that the Commonwealth intended to establish the corporation's criminal liability by aggregating the knowledge and actions of multiple employees even if no one employee was criminally liable individually for the crime. At the Commonwealth's request, the judge reported two questions of law to the Appeals Court seeking a determination whether corporate criminal liability may be based on this theory of aggregation. See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). These questions are:

"1. May a corporation be found guilty of involuntary manslaughter under General Laws chapter 265 section 13 based upon a theory of collective knowledge and conduct of multiple of its employees, in the absence of one specific

---

[1] The defendant was indicted also on charges of Medicaid fraud. Those charges were dismissed and are not part of this appeal.

employee who is criminally liable for the commission of that crime?

"2. May a corporation be found guilty of neglect of a resident of its long-term care facility under General Laws chapter 265 section 38, repealed [after the death of the resident] by St. 2004 chapter 501 section 9, based upon a theory of collective knowledge and conduct of multiple of its employees, in the absence of one specific employee who is criminally liable for the commission of that crime?"[2]

We granted the defendant's application for direct appellate review and answer both questions "No."[3]

1. *Facts and procedural history.* We summarize the facts reported by the judge and the relevant procedural history.[4] Julia McCauley became a resident of the nursing home in 1996. She suffered from, among other ailments, brain damage and dementia. On one occasion in 1999, McCauley, sitting in a wheelchair, was found in the facility's entrance foyer between the two sets of entry doors. Nursing home staff determined that she was at risk of leaving the nursing home unattended, and a physician ordered that she wear a "WanderGuard" signaling device at all times.[5] At least two nursing home employees knew that after that, McCauley attempted to leave the nursing home through the front doors on multiple occasions.

Nursing home procedure provided that physician's treatment

---

[2]General Laws c. 265, § 38, was added July 11, 1980, see St. 1980, c. 479, § 2, and repealed effective April 11, 2005. See St. 2004, c. 501, § 9. Thus, the statute was in effect during McCauley's residency at the Life Care Centers of Acton nursing home (nursing home).

[3]We acknowledge the brief of amici curiae AARP, NCCNHR, the Disability Law Center, and the Center for Public Representation in support of the Commonwealth; the brief of amici curiae Massachusetts Senior Care Association and American Health Care Association and the brief of amici curiae New England Legal Foundation, Associated Industries of Massachusetts, and Massachusetts High Technology Council in support of the defendant; and the amicus curiae briefs of the Joint Commission, the Massachusetts Association of 766 Approved Private Schools, and the Professional Liability Foundation, Ltd.

[4]Drawing on grand jury testimony, the judge reported the evidence that the Commonwealth expects to present at trial. The defendant stipulates that these are the allegations presented to the grand jury that the Commonwealth asserts as the basis for its case, but does not stipulate to the truth of these facts.

[5]A "WanderGuard" is a bracelet that activates an audible alarm and temporarily locks exterior doors when the patient approaches an exit.

orders be transcribed to a sheet of paper (treatment sheet) containing a box for each day of the month. After treatment was carried out on a given day, the nurse administering the treatment was required to check the box for that day. McCauley's treatment order required that a nurse check once daily, during the 11 P.M. to 7 A.M. shift, that McCauley was wearing the WanderGuard and that it was operational.

According to nursing home policy, treatment sheets were "edited" by two nurses at the beginning of each month. Those nurses checked that the physician's orders were transcribed correctly on the treatment sheets. In an effort to prevent mistakes from occurring, the two nurses completed this process independently.

In January, 2004, the nursing home's director of nursing asked an administrative employee to "clean[] up" all residents' treatment sheets. Misinterpreting this instruction, the employee removed numerous physician's orders, including WanderGuard orders, from the treatment sheets. The omission of the WanderGuard order from McCauley's treatment sheet was not discovered during the monthly editing process in February or March, 2004.[6]

On the evening of April 16, 2004, McCauley's unit was "short-staffed." A substitute from another unit replaced McCauley's regular nurse. He did not know McCauley and was not aware that she was supposed to wear a WanderGuard. It was his practice to ensure that a WanderGuard was in place if there was an order for one on the treatment sheet; if there was no such order, he did not check for a WanderGuard. Shortly before 7 A.M. on the morning of April 17, 2004, a nurse's aide wheeled McCauley to the nurses' station near the front entry. A few minutes later, McCauley, who was not wearing a WanderGuard, left the nursing home in her wheelchair through the two sets of double doors. After passing through the doorways, she

---

[6]Two nurses edited McCauley's treatment sheet in February, 2004. However, only one nurse edited it in March, 2004, and no one edited it in April, 2004. Gayle Edwards, a nursing supervisor and the second highest-ranking nurse at the nursing home, conducted one of the February edits and the only March edit. She did not notice that the WanderGuard order was missing on either occasion. Other employees testified that they discussed the deletions of the WanderGuard orders with Edwards, but Edwards denies that she knew about the deletions at the time she edited McCauley's treatment sheets.

fell down eight steps and died as a result of injuries suffered during the fall. A grand jury indicted the defendant on charges of involuntary manslaughter, see G. L. c. 265, § 13; abuse, neglect, or mistreatment of a resident of a long-term care facility, see G. L. c. 265, § 38, repealed by St. 2004, c. 501, § 9; and making a false Medicaid claim, see G. L. c. 118E, § 40. The defendant filed a motion to dismiss all counts of the indictment. In support of its motion, the defendant argued, inter alia, that the indictments did not effectively state a criminal offense because they sought to impose criminal liability based on the collective knowledge and actions (or failures to act) of the corporation's employees where no individual employee was criminally responsible by himself[7]; the defendant emphasized that the Commonwealth's theory of aggregation had never been recognized in the Commonwealth. The charge of making a false Medicaid claim was dismissed because the evidence presented to the grand jury did not establish that the defendant made any false statement or representation of a material fact. The motion to dismiss was denied with respect to the other charges; the judge did not decide whether the Commonwealth's aggregation theory was a permissible basis for those charges because she determined that the Commonwealth could proceed against the defendant based solely on Edwards's conduct.

The defendant subsequently filed a motion in limine to exclude any evidence relevant only to a theory of criminal liability based on collective knowledge and conduct. The judge allowed the motion[8] but, as stated, reported the questions concerning the validity of the collective knowledge and conduct theory to the Appeals Court.[9] We granted the defendant's application for direct appellate review.

We conclude that the judge who allowed the motion in limine determined correctly that the Commonwealth may not prosecute

---

[7]After investigation, the Commonwealth declined to file criminal charges against any employee of the nursing home.

[8]The judge who ruled on the motion in limine and reported the questions was different than the judge who decided the motion to dismiss.

[9]See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), which provides that "[i]f, prior to trial . . . a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein."

a corporation for criminal conduct based on a theory that requires aggregating the knowledge and conduct of multiple employees.[10] A corporation may be criminally liable for the crimes alleged here only where at least one of its employees could be found individually liable for the crime.

2. *Discussion.* a. *Criminal liability of corporation for involuntary manslaughter based on theory of collective knowledge and conduct of multiple employees.* The Commonwealth argues that criminal liability may attach to a corporation based on the aggregate knowledge and conduct of its employees even where no individual employee has committed a crime.[11] Specifically, the Commonwealth argues that the defendant may be convicted of involuntary manslaughter in this case by accumulating the removal of the WanderGuard order from McCauley's chart; the knowledge of her regular nurses that she was supposed to wear the Wander-Guard; the knowledge of various employees that McCauley had a tendency to attempt to leave the nursing home; the knowledge of the nursing supervisor that the WanderGuard order had been removed from the chart together with her failure to have the treatment order re-entered; and the failure of the substitute nurse to check that McCauley was wearing her WanderGuard. Although the Commonwealth admits that its theory of corporate criminal liability has not been recognized under Massachusetts law, it argues that this theory follows naturally from the principles underlying corporate liability in other contexts. We are not persuaded.

Pursuant to the theory of respondeat superior, a corporation is responsible for both the acts and omissions of any one of its employees. See *Commonwealth* v. *Angelo Todesca Corp.*, 446 Mass. 128, 133-135 (2006). This is the case whether those acts are intentional, negligent, wanton, or reckless. See *id.* at 134. By its theory of aggregation, the Commonwealth is attempting to promote conduct that is no more than negligent on the part of

---

[10]The Commonwealth argues in this court that it should also be able to aggregate the intent of the employees. The reported questions, however, ask only about a theory of collective knowledge and conduct.

[11]As stated, see note 7, *supra*, the Commonwealth declined to initiate criminal proceedings against any individual nursing home employee; however, the judge who decided the motion to dismiss determined that there is sufficient evidence of the nursing supervisor's individual liability to proceed against the defendant on a theory of respondeat superior. The validity of the judge's ruling to that effect is not before us.

one or more employees into wanton or reckless conduct on the part of the corporation. This theory is illogical and such an argument cannot succeed. If at least one employee did not act wantonly or recklessly, then the corporation cannot be held to a higher standard of culpability by combining various employees' acts.

i. *Involuntary manslaughter.* We begin by examining the requirements of the crime of involuntary manslaughter. Involuntary manslaughter is "an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct." *Commonwealth* v. *Gonzalez*, 443 Mass. 799, 808 (2005), quoting *Commonwealth* v. *Godin*, 374 Mass. 120, 126 (1977). Wanton or reckless conduct generally involves a wilful act that is undertaken in disregard of the probable harm to others that may result. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 397 (1944). Although our cases state frequently that "[t]he essence of wanton or reckless conduct is intentional conduct," see *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990), quoting *Commonwealth* v. *Welansky*, *supra* at 399, reckless conduct does not require that the actor intend the specific result of his or her conduct, but only that he or she intended to do the reckless act. See *Commonwealth* v. *Levesque*, 436 Mass. 443, 452 (2002). Accordingly, when we refer to the intent required to support a conviction of involuntary manslaughter, we refer to the intent to perform the act that causes death and not the intent that a death occur.

Conviction of involuntary manslaughter requires more than negligence or gross negligence. See *Commonwealth* v. *Welansky*, *supra* at 399-400. The act causing death must be undertaken in disregard of probable harm to others in circumstances where there is a high likelihood that such harm will result. See *id.* at 397, 399.

A conviction of involuntary manslaughter can in some circumstances be based on a failure to act. If an individual's actions create a life-threatening condition, there is a duty to take reasonable steps to alleviate the risk created, and the failure to do so may rise to the level of recklessness necessary for involuntary manslaughter. See *Commonwealth* v. *Levesque*, *supra* at 449-453 (squatters who knocked over candle in abandoned warehouse, starting fire, could be found guilty of involuntary

manslaughter because they took no action to put out fire or notify authorities, even though it was highly foreseeable fire-fighters would respond to fire and be placed at risk of serious harm).

ii. *Criminal liability for individual acts of employees.* Next, we examine the requirements for establishing criminal liability against corporations. Both parties recognize that it is well established under Massachusetts law that a corporation may be vicariously liable for crimes committed by an employee when that employee acts pursuant to authority vested in him by the corporation. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 280 (1971). We have stated consistently and repeatedly that, in order to establish corporate criminal liability, the Commonwealth must show that (1) an individual committed a criminal offense; (2) at the time of the offense that individual was involved in a corporate project; and (3) that individual had been vested with authority to act for the corporation with respect to that project. See *id.* See also *Commonwealth* v. *Angelo Todesca Corp.*, *supra* at 134; *Commonwealth* v. *L.A.L. Corp.*, 400 Mass. 737, 744 (1987).

Our previous cases have predicated a finding of criminal liability against a corporation based on a theory of respondeat superior. See, e.g., *Commonwealth* v. *Angelo Todesca Corp.*, *supra* at 134-135 (corporation vicariously liable for offense of motor vehicle homicide; although corporate entity was unable to "operate" motor vehicle, its liability was imputed from criminal conduct of its employee); *Commonwealth* v. *L.A.L. Corp.*, *supra* (corporation could be found vicariously liable for crime of serving alcohol to minors where some bartender employees were individually liable for crime).

We conclude, consistent with our existing case law, see *Commonwealth* v. *Angelo Todesca Corp.*, *supra*, that a corporation acts with a given mental state in a criminal context only if at least one employee who acts (or fails to act) possesses the requisite mental state at the time of the act (or failure to act). In the present case, the Commonwealth seeks to satisfy its burden to prove wanton or reckless conduct on the part of the corporate defendant by adding together the actions and omissions of corporate employees who at worst have been merely negligent.

Such aggregation is not supported by logic or law. If one person's act of simple negligence caused a death, there would be insufficient evidence to convict that person of involuntary manslaughter. See *Commonwealth* v. *Birks*, 435 Mass. 782, 790-791 (2002). The result is the same when the death is caused by multiple individuals who act merely negligently rather than wantonly or recklessly. Because wanton or reckless behavior is an essential element of the offense of involuntary manslaughter, the evidence is insufficient to support a conviction unless there is at least one individual whose behavior could permissibly be found to have been wanton or reckless.

In our view, such aggregation of less culpable behavior to create more culpable behavior not only is illogical but also raises due process concerns. See *Commonwealth* v. *Welansky*, *supra* at 400 ("at common law conduct does not become criminal until it passes the borders of negligence and gross negligence and enters into the domain of wanton or reckless conduct"). Permitting a finding of wantonness or recklessness to be derived by aggregating acts that are no more than negligent would impose on a corporation the stigma and other serious consequences[12] of a criminal conviction even though no person in the corporation possessed the level of moral culpability that the definition of the crime requires. See *Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 513 F.3d 702, 707-708 (7th Cir. 2008); *Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004).

Our conclusion is consistent with the law governing corporate liability in the civil context. See *Commonwealth* v. *Beneficial Fin. Co.*, *supra* at 290-294 (in developing doctrine of corporate criminal liability, we have relied at times on agency concepts drawn from civil law). In civil cases, we have permitted the imputation to a corporation of the aggregate knowledge of its employees where no individual employee may alone have such knowledge. See *Birbiglia* v. *Saint Vincent Hosp., Inc.*, 427 Mass. 80, 87 (1998). As the United States Supreme Court has stated in reference to Federal regulatory offenses, "the term 'knowingly'

---

[12]Here, according to the defendant, those consequences are serious and would essentially destroy the defendant's enterprise; the criminal conviction would result in loss of Medicaid and Medicare licensure and, therefore, loss of the entire nursing home business.

does not necessarily have any reference to a culpable state of mind or to knowledge of the law." *Bryan* v. *United States*, 524 U.S. 184, 192 (1998). However, in civil proceedings, we have rejected the proposition that a mental state may be imputed to a corporation by aggregating the actions of employees where no one employee possessed that mental state. See *Birbiglia* v. *Saint Vincent Hosp., Inc., supra* at 87 n.5.

In addition, the majority of Federal courts to consider the issue have reached the conclusion that, in both the criminal and civil contexts, a corporation acts with a given mental state only if at least one employee who acts (or fails to act) possesses the requisite mental state at the time of the act (or failure to act). See *First Equity Corp. of Fla.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256, 259-260 (S.D.N.Y. 1988). See also *Southland Sec. Corp.* v. *INSpire Ins. Solutions, Inc., supra* at 366; *Saba* v. *Compagnie Nationale Air France*, 78 F.3d 664, 670 n.6 (D.C. Cir. 1996); *Nordstrom, Inc.* v. *Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995); *United States* v. *LBS Bank-N.Y., Inc.*, 757 F. Supp. 496, 501 n.7 (E.D. Pa. 1990). But see *In re Worldcom, Inc. Sec. Litigation*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005) (mental state may be imputed to corporation based on theory of collective knowledge and intent).

The Commonwealth argues that *United States* v. *Bank of New England*, 821 F.2d 844 (1987), establishes that, in a criminal proceeding, the criminal liability of a corporation can be derived by aggregating the combined actions of its employees, and that such a conclusion follows naturally from our earlier holdings on corporate criminal liability. In that case, *id.* at 846-847, the defendant, a corporation, was charged with criminal violations of the Currency Transaction Reporting Act. See 31 U.S.C. § 5311-5322 (1982). That statute imposes criminal penalties for "willfully violating" its transaction reporting provisions. See 31 U.S.C. § 5322. See *United States* v. *Bank of New England, supra* at 855. Although culpability in that case was ultimately based on the individual liability of a bank supervisor, the United States Court of Appeals for the First Circuit held that the trial judge's instruction on aggregation of knowledge was not erroneous. See *id.* at 856-857.

The Commonwealth's contention is unavailing. The crime in

question in that case was a Federal regulatory offense. See *id.* at 856. The mens rea required for such offenses is satisfied by "a disregard for the governing statute and an indifference to its requirements." *Id.,* quoting *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. 111, 127 n.20 (1985). Thus, the mens rea at issue in *United States* v. *Bank of New England, supra,* was essentially only the requirement of knowledge. In contrast, the crime of involuntary manslaughter requires an act taken in disregard of a high probability of harm to others so that the act is wanton or reckless. See *Commonwealth* v. *Gonzalez,* 443 Mass. 799, 808 (2005).

iii. *Liability in this case.* As stated, involuntary manslaughter requires wanton or reckless conduct. See *id.* Conduct is wanton or reckless only when the actor disregards a high likelihood of probable harm to others. See *Commonwealth* v. *Welansky,* 316 Mass. 383, 397, 399 (1944). In the present case, an employee of the nursing home removed WanderGuard orders from the treatment sheets of all patients. Even if her action may be imputed to the corporation, and even if her conduct were negligent, her action may not be combined with the acts or conduct of the corporation's other employees for the purpose of determining whether the corporation as a whole acted recklessly so as to cause McCauley's death. Accordingly, we answer Question 1 "No."

b. *Criminal liability of corporation for neglect of resident of long-term care facility based on theory of collective knowledge and conduct of multiple employees.* The principles articulated in our answer to Question 1 resolve this question. General Laws c. 265, § 38, now repealed, provides criminal penalties for "[a]ny person who knowingly and wilfully abuses, mistreats, or neglects a patient or resident of a long-term care facility." See G. L. c. 265, § 38, repealed by St. 2004, c. 501, § 9. A corporation cannot be convicted of this offense unless the individual employee who commits the abuse, mistreatment, or neglect acts knowingly and wilfully.[13] When there is no evidence of such knowing and wilful conduct on the part of any one employee,

---

[13]The parties have argued whether the word "wilfully" in the statute requires the actor to intend to "abuse[], mistreat[], or neglect[]" the patient or rather intend only to commit the act causing the abuse, mistreatment, or neglect. Either definition requires an intentional act. In response to a request from the

the corporation cannot be liable for such conduct. Accordingly, the answer to Question 2 is "No."

*Conclusion.* For the reasons set forth above, we answer the first and second reported questions "No." The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

defendant to report this question, the judge refused to do so. Because of our answer to Question 1, a resolution of this issue is not necessary to our decision. Although both sides urge us to do so in their briefs to this court, we decline to address the unreported issue. As stated, the statute has been repealed.