NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1552                                    Appeals Court

COMMONWEALTH vs. FILIP M. CRUZ.

No. 13-P-1552.

Bristol.     February 27, 2015. - September 4, 2015.

Present: Vuono, Milkey, & Blake, JJ.

Wanton or Reckless Conduct. Practice, Criminal, Duplicative
    convictions, Lesser included offense.

Indictments found and returned in the Superior Court
Department on August 18, 2011.

The cases were tried before D. Lloyd Macdonald, J.

Joseph J. Czerwonka for the defendant.
Owen J. Murphy, Assistant District Attorney, for the
Commonwealth.

VUONO, J. The defendant's mother, Olivia Cruz, was ninety-one years old when she died of sepsis caused by an infection from wounds that developed on her buttocks as a result of sitting in her feces and urine over a period of several weeks.

The defendant was Olivia's[1] caretaker.  A Bristol County grand jury returned two indictments charging the defendant with offenses that, as alleged by the Commonwealth, resulted in Olivia's death.  The first indictment charged him with wantonly or recklessly permitting serious bodily injury to Olivia, an elder or person with a disability under his care.  See G. L. c. 265, § 13K(e).  The second charged him with having wantonly or recklessly committed or permitted another to commit abuse, neglect or mistreatment upon Olivia.  See G. L. c. 265, § 13K(d 1/2).  He was then convicted on both charges.  On appeal, the defendant challenges the sufficiency of the evidence claiming, in particular, that the Commonwealth failed to prove that he acted wantonly or recklessly.  He also argues that his convictions are duplicative because § 13K(d 1/2) is a lesser included offense of § 13K(e).  We affirm.

When the evidence is viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the jury could have found as follows.  In September, 2008, the defendant lived with his parents, Olivia and Antonio, in Fall River.  Olivia suffered from dementia associated with Alzheimer's disease.  She was obese and could not move without assistance.  Antonio, who was eighty-nine years

---

[1] Because the victim and the defendant share the same surname, we use first names to avoid confusion.

old at the time of the events in question, was also in poor health and could not care for Olivia on his own.[2]  Thus, the defendant assumed responsibility for his mother's care.  He claimed to have bathed, dressed, and fed Olivia daily, and had left his job in order to provide her with full-time care.

On September 28, 2010, paramedics were dispatched to the Cruz's home in response to a report that Olivia had suffered a stroke.  The defendant was outside when the paramedics arrived.  He was agitated and urged the paramedics to get his mother out of the house.  When the paramedics entered the house, they were overwhelmed by the odor of feces, urine, and rotting flesh.  They found Olivia slumped over in a recliner.  She was lethargic and incoherent.  She was also dirty and unkempt, and as the paramedics were moving her in preparation for transport to the hospital, they found a dirty underpad, known as a "Chux," stuck to her skin.  She was in acute distress:  she had a weak pulse and was extremely dehydrated.

Olivia was taken to the trauma room at St. Anne's Hospital in Fall River and found to be in septic shock.  The subsequent examination revealed that Olivia had decubitus ulcers -- deep open sores which had grown to the size of softballs -- that encompassed her entire buttocks such that her bones were visible.  Olivia underwent emergency surgery to remove the

---

[2] Antonio died prior to the start of the trial.

infected tissue, which had become gangrenous. However, the surgery was not successful and Olivia died the following morning as a result of sepsis and septic shock caused by the widespread infection. The surgeon opined that the ulcers would have taken six weeks to develop, and according to the medical examiner who conducted the autopsy, Olivia could have been in a state of septic shock for up to a week. The medical examiner also opined that the infection resulting from prolonged immersion in feces could have affected Olivia for over a week and up to six or seven months.[3] Both the surgeon and the emergency room doctor who treated Olivia testified that the sores were preventable and could have been treated, at least initially, by moving Olivia to alleviate the pressure on her buttocks. The defendant claimed that he moved his mother from the recliner daily to bathe her, but Antonio contradicted this claim and told the police that the defendant did not take Olivia out of the recliner. The defendant acknowledged that he noticed a "reddened area" on her buttocks approximately two weeks prior to Olivia's death, and that she had been confined to the recliner for two or three weeks.

---

[3] The medical examiner testified that Oliva "died as a result of sepsis and septic shock due to broad ulceration of the buttocks with fasciitis (an infection which affects the fascia, a fibrous tissue that binds the muscles) of the right hip due to prolonged emersion in feces and urine . . . ." Secondary contributing factors were "arthrosclerotic and hypertensive cardiovascular disease and obesity."

The Commonwealth presented evidence of the complete squalor in which Olivia and Antonio lived. After Olivia died, the police executed a search warrant at the home and found rotting food in the kitchen and flies everywhere. A commode covered with dried feces was in Antonio's bedroom. The jury also heard evidence of the defendant's unusual behavior, which ranged from being anxious and agitated when the paramedics arrived, to being uncooperative and flippant with medical personnel at the hospital. Upon learning that the police wanted to speak with him about his mother's condition, the defendant responded, "Are they going to arrest me now or later?"

1. Sufficiency of the evidence. To establish a violation of § 13K(e), the Commonwealth was required to prove four elements: (1) the defendant was a caretaker, (2) of an elder or person with a disability, and he (3) wantonly or recklessly (4) permitted serious bodily injury upon such person. The first three elements of § 13K(d 1/2), are the same; the fourth element, however, requires the Commonwealth to prove that the defendant committed or permitted another to commit abuse, neglect, or mistreatment upon such person. The defendant does not contest the sufficiency of the evidence with regard to the first two elements of the offenses. Rather, as we have noted, he claims that the evidence was insufficient to support the inference that he acted wantonly or recklessly.

"Wanton or reckless conduct is 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.'" Commonwealth v. Earle, 458 Mass. 341, 347 (2010), quoting from Commonwealth v. Welansky, 316 Mass. 383, 399 (1944). See Commonwealth v. Pugh, 462 Mass. 482, 496 (2012), quoting from Commonwealth v. Michaud, 389 Mass. 491, 499 (1983) ("Proof of recklessness requires 'more than a mistake of judgment or even gross negligence' . . .").

Whether the defendant's conduct is wanton or reckless "is determined based either on the defendant's specific knowledge or on what a reasonable person should have known in the circumstances." Pugh, supra. Using the objective measure of recklessness, which applies in this case, a "defendant's actions constitute 'wanton or reckless conduct . . . if an ordinary normal [man] under the same circumstances would have realized the gravity of the danger.'" Id. at 496-497, quoting from Welansky, supra at 398-399. To act wantonly or recklessly, a defendant need not "intend the specific result of his . . . conduct," but need only "intend[] to do the reckless act." Commonwealth v. Life Care Centers of America, Inc., 456 Mass. 826, 832 (2010), quoting from Welansky, supra at 399.

Although there was no direct evidence that the defendant understood the severity of his mother's condition, there was

sufficient circumstantial evidence.  See Commonwealth v. Garcia, 47 Mass. App. Ct. 419, 422 (1999).  The foul smell alone would have alerted an ordinary person in the same circumstances to the seriousness of the situation.  But here there was more.  The sores on Olivia's buttocks were the size of softballs and would have been observed by the defendant had he bathed his mother as he claimed.  In this tragic case, the defendant's various acts of omission (i.e., his failure to move his mother from the recliner so as to prevent the development of ulcers, to properly bathe and clean his mother, and to seek appropriate medical assistance) were sufficient to establish wanton or reckless conduct beyond a reasonable doubt.

The defendant's reliance on the fact that a social worker, who had visited the home approximately three weeks earlier in response to a complaint of alleged elder abuse, did not detect any foul smells or observe Olivia in any obvious distress is of no consequence as the jury were not required to infer from this evidence that the defendant was providing his mother with adequate care.  See Commonwealth v. Harris, 468 Mass. 429, 440-441 (2014).  Nor was the jury required to accept the defendant's explanation, presented through cross-examination, that he was a "layman" who cared for his mother to the best of his abilities.  "[Persons] may be reckless within the meaning of

the law although [they themselves thought they were] careful."
Garcia, supra, quoting from Welansky, supra at 398-399.

2. Duplicative convictions. The defendant argues that the
two offenses set forth in § 13K(d 1/2) and § 13K(e) are
duplicative because a violation of § 13K(d 1/2) is a lesser
included offense of § 13K(e), and therefore, his convictions
violate his right to be free from double jeopardy under the
Fifth Amendment to the United States Constitution and
Massachusetts common law.[4]

Our cases hold that "a defendant may properly be punished
for two crimes arising out of the same course of conduct
provided that each crime requires proof of an element that the
other does not." Commonwealth v. Vick, 454 Mass. 418, 431
(2009), quoting from Commonwealth v. Valliere, 437 Mass. 366,
371 (2002). "As long as each offense requires proof of an
additional element that the other does not, 'neither crime is a
lesser included offense of the other, and convictions on both

_____

[4] We are not concerned here with multiple indictments
charging offenses under the same statute. Thus, we need not
determine whether the Commonwealth proved that the defendant
engaged in separate and discrete acts of criminal conduct. See
Commonwealth v. Traylor, 472 Mass. 260, 269-270 (2015). The
claimed double jeopardy violation at issue here arises from
"multiple 'prosecutions for different crimes, under different
statutes, arising out of the same criminal episode[, and
therefore,] we are required to determine whether either crime
charged is a lesser included offense of the other.'" Id. at
267-268, quoting from Commonwealth v. Donovan, 395 Mass. 20, 28
(1985).

are . . . not [duplicative].'" Vick, supra, quoting from Commonwealth v. Jones, 382 Mass. 387, 393 (1981).

A conviction pursuant to § 13K(d 1/2) requires evidence that a caretaker "wantonly or recklessly commits or permits another to commit abuse, neglect or mistreatment" upon an elder or person with a disability (emphasis supplied). The terms "abuse, neglect or mistreatment" are defined by the statute as follows: (1) "Abuse" is "physical conduct which either harms or creates a substantial likelihood of harm," (2) "Neglect" is "the failure to provide treatment or services necessary to maintain health and safety and which either harms or creates a substantial likelihood of harm," and (3) "Mistreatment" is "the use of medications or treatments, isolation, or physical or chemical restraints which harms or creates a substantial likelihood of harm." G. L. c. 265, § 13K, as amended through St. 2004, c. 501, §§ 3-6, 8. A conviction pursuant to § 13K(e) requires the Commonwealth to prove that a caretaker "wantonly or recklessly permits serious bodily injury" to an elder or person with a disability (emphasis supplied). The term "serious bodily injury" is defined by the statue as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death." G. L. c. 265, § 13K(e), as inserted by St. 1995, c. 297, § 4.

Contrary to the defendant's claim, the difference between § 13K(d 1/2) and § 13K(e) is not a matter of degree. While § 13K(d 1/2) encompasses conduct that constitutes "abuse, neglect or mistreatment," § 13K(e) applies more broadly to any conduct that results in serious bodily injury. As such, each offense "requires proof of an additional fact that the other does not." Edge v. Commonwealth, 451 Mass. 74, 75 (2008), quoting from Commonwealth v. Crocker, 384 Mass. 353, 357 (1981). Put another way, a violation of § 13K(e) does not necessarily constitute a violation of § 13K(d 1/2).[5] See Commonwealth v. Torres, 468 Mass. 286, 289 (2014) ("An offense is a lesser included offense only if one cannot be found guilty of the greater offense without also being guilty of the lesser offense"). Certainly, engaging in conduct that constitutes

---

[5] We acknowledge that in this case the evidence establishing the two offenses overlap. We also recognize, as the defendant correctly suggests, that a defendant who is guilty of permitting serious bodily injury to an elder or a person with a disability, generally also will be guilty of committing or permitting another to commit abuse, neglect, or mistreatment to that person. We are required, however, to apply the elements-based approach, first articulated in Morey v. Commonwealth, 108 Mass. 433, 434 (1871), to claims of purported duplicative convictions. As the Supreme Judicial Court made clear in Vick, 454 Mass. at 431-435, the elements-based approach has not been expanded to permit a conduct-based analysis of the facts of a particular case. In short, the traditional elements-based approach requires us to consider theoretical possibilities as well as practical ones. "It bears repeating that, where, as here, neither crime is a lesser included offense of the other, multiple punishments are permitted even where the offenses arise from the very same criminal event." Id. at 436.

abuse, neglect, or mistreatment is not the only way by which a caretaker can permit serious bodily injury to an elder.  See id. at 289-290, quoting from Commonwealth v. Housen, 83 Mass. App. Ct. 174, 178 2013 (violation of an abuse prevention order was not a lesser included offense of assault and battery on a person protected by an abuse prevention order because "it is possible to violate an abuse prevention order in myriad ways").[6] Accordingly, § 13K(d 1/2) is not a lesser included offense of § 13K(e), and the defendant's convictions are not duplicative.

Judgments affirmed.

---

[6] The defendant's reliance on Commonwealth v. Roderiques, 462 Mass. 415 (2012), is unavailing.  In that case, the Supreme Judicial Court held that reckless endangerment of a child (G. L. c. 265, § 13L) was a lesser included offense of wantonly or recklessly permitting an assault and battery on a child (G. L. c. 265, § 13J[b], fourth par.), even though § 13L prescribed conduct that created a "substantial risk of serious bodily injury," while § 13J(b), fourth par., applied where the defendant permitted "substantial bodily injury" (emphasis supplied).  Id. at 424 & n.3.  In so holding, the court explained that the distinction between injury and the risk of injury was of no consequence because "[t]he occurrence of an injury presupposes that a risk of injury has been created."  Id. at 423.  Here, the difference between § 13K(d 1/2) and § 13K(e) is not merely that one requires proof of injury while the other requires proof that the conduct created a risk of injury.  Rather, as discussed supra, § 13K(d 1/2) is narrower in scope, applying only in cases of "abuse, neglect or mistreatment."