NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-543

COMMONWEALTH

vs.

MATTHEW POTTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was convicted of manslaughter in violation of G. L. c. 265, § 13.[1]  On appeal, the defendant claims that the trial court erred in denying his motion for a required finding of not guilty because the Commonwealth failed to present sufficient evidence to support a conviction for involuntary manslaughter.  In the alternative, the defendant argues that if the evidence is found to be sufficient to support his conviction, that the Commonwealth did not meet its burden to prove that the defendant

_____

[1] The jury found the defendant not guilty of two counts of indecent assault and battery on a person over fourteen, in violation of G. L. c. 265, § 13H, and one count of assault, in violation of G. L. c. 265, § 13A (a).

did not act in proper self-defense, and thus, the conviction cannot stand.  We affirm.

Background.  We summarize the relevant facts that the jury could have found, viewing the evidence in the light most favorable to the Commonwealth, and reserving certain facts for later discussion.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  On January 26, 2019, Matthew Potter, the defendant, was at the Nickerson Post of the American Legion (Post) in Quincy with his brother, Steven Potter; Chris McCallum (victim) and his brother William McCallum (Billy), were also at the Post.

In the late evening, the director of the Post declared the bar closed and told the patrons to leave.  As patrons exited, a large fight broke out; in the melee, the defendant, the victim, and Billy were rolling around on the ground.  An acquaintance pulled Billy out of the group, then pulled the defendant up and out of the group and "told [the defendant] to screw."  The defendant initially moved away, but then turned back to face the door of the Post and continued to argue with Billy.  The acquaintance stood between the defendant and Billy, who continued to yell at each other; the victim came from behind Billy and went past the acquaintance.  Seconds later, while the victim was standing still with his hands at his sides by his pants pockets, "his head snapped around . . . and his body

2

followed, and he just went down." When the victim fell to the ground, the defendant was a foot or two away standing over him. After the victim fell, the defendant backed away and left. The victim was transported to the hospital and died from his injuries; his cause of death was blunt force trauma to the head.

Later the same night, the defendant was stopped by a police officer who asked how he sustained injuries to his lip and face. The defendant stated that he "slipped and fell on ice."

The Commonwealth's theory at trial was that the defendant caused the fatal injury by forcefully punching the victim causing him to fall and strike his head on the pavement. The defendant moved for a required finding of not guilty both at the close of the Commonwealth's evidence and at the close of all of the evidence. The judge denied both motions. As relevant to the defendant's appeal, the jury were instructed on involuntary manslaughter under both the theory of wanton or reckless conduct and the theory of battery, and found the defendant guilty on both theories. This appeal followed.

Discussion. 1. Sufficiency of the evidence of manslaughter. "A defendant is entitled to a required finding of not guilty only when 'the evidence is insufficient as a matter of law to sustain a conviction on the charge.'" Commonwealth v. Andrews, 427 Mass. 434, 440 (1998), quoting Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995). We review "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Latimore, 378 Mass. at 677.

The elements of manslaughter are derived from common law. Commonwealth v. Catalina, 407 Mass. 779, 783 (1990). "A verdict of involuntary manslaughter is warranted only where the defendant caused an unintentional death (1) during the commission of an act amounting to wanton or reckless conduct, or (2) during the commission of a battery" (quotation and citation omitted). Commonwealth v. Degro, 432 Mass. 319, 331 (2000). The evidence at trial was sufficient to prove the defendant's guilt under either theory.

As an initial matter, we are satisfied that despite the absence of direct evidence that the defendant punched the victim and caused him to fall and hit his head, causing the fatal injury, the evidence was sufficient to prove that the defendant did so. The jury were permitted to rely entirely on circumstantial evidence to decide, including the defendant's recent fistfight with the victim and Billy and the defendant's failure to leave the area when that fight broke up, his proximity to the victim at the time that the victim's head snapped back and he fell to the ground, and the defendant's unlikely explanation to the police about the injuries on this

4

face.  See Commonwealth v. Cullen, 395 Mass. 225, 230 (1985) ("Inferences drawn from circumstantial evidence need not be inescapable or necessary, so long as they are reasonable, possible and not unwarranted because too remote" [quotation and citation omitted]).  From this evidence the jury could have found that the defendant's blow was the cause of the victim's fall and subsequent fatal injury.

The evidence was likewise sufficient to prove that the death was involuntary manslaughter under either of the two theories argued by the Commonwealth.  The first theory applies "where death is caused by wanton or reckless conduct -- that is, 'intentional conduct that create[s] a high degree of likelihood that substantial harm will result to another person.'" Commonwealth v. Njugana, 495 Mass. 770, 781 (2025), quoting Commonwealth v. O'Brien, 494 Mass. 288, 297 (2024).  "Wanton or reckless conduct generally involves a [willful] act that is undertaken in disregard of the probable harm to others that may result."  Commonwealth v. Life Care Ctrs. of Am., Inc., 456 Mass. 826, 832 (2010).  "Although our cases state frequently that [t]he essence of wanton or reckless conduct is intentional conduct, reckless conduct does not require that the actor intend the specific result of his or her conduct, but only that he or she intended to do the reckless act" (quotation and citations omitted).  Id.

Here, the jury could have found that the defendant punched the victim as the victim stood looking around, with his hands down by his sides, unprepared for the blow. The jury could also have found that the defendant hit the victim with enough force that "[the victim's] head snapped around . . . and he just went . . . [r]ight down like a tree," causing him to hit the pavement so hard that he suffered multiple skull fractures. We are satisfied that this evidence was sufficient to prove that the punch was "undertaken in disregard of probable harm" to the victim and "there [was] a high likelihood that such harm [would] result," Life Care Ctrs. of Am., Inc., 456 Mass. at 832, and that the jury could properly have concluded, as it did, that the defendant's conduct was wanton and reckless. See Commonwealth v. Pease, 49 Mass. App. Ct. 539, 541 (2000) (defendant's forceful shove of victim to sidewalk, resulting in victim's death from head injury, was sufficient to prove wanton and reckless conduct required for conviction of involuntary manslaughter). While the defendant may not have intended to cause the victim's death, he did intend the punch which caused that result. See Commonwealth v. Levesque, 436 Mass. 443, 452 (2002).

Under the second theory, involuntary manslaughter occurs "where the defendant caused an unintentional death . . . during the commission of a battery" (citation omitted). Commonwealth

6

v. Felix, 476 Mass. 750, 760 (2017). "[T]he battery in question must be one that does not amount to a felony, but one that the defendant knew or should have known endangered human life." Id.

The evidence was likewise sufficient to prove the defendant's guilt under this theory because, as noted above, the jury could have found that the defendant struck the victim -- thereby committing a battery against him -- while the victim was unprepared with his hands down by his sides, and that the defendant knew or should have known that doing so endangered the victim's life. See Commonwealth v. Sheppard, 404 Mass. 774, 777 (1989) (punch by defendant that caused victim to fall to street and suffer head injury, resulting in death, was sufficient to support jury's finding of intentional battery and resulting manslaughter conviction).[2]

2. Self-defense. A defendant is entitled to a jury instruction on self-defense when the evidence, viewed in the light most favorable to the defendant, raises

> "a reasonable doubt that the defendant: (1) had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and

---

[2] The defendant rested without presenting any evidence, so we need not consider whether the prosecution's case deteriorated after the close of its case. Cf. Commonwealth v. Wurtzberger, 104 Mass. App. Ct. 558, 565-566 (2024).

7

        (3) used no more force than was reasonably necessary in the
        circumstances of the case."

Commonwealth v. Harrington, 379 Mass. 446, 450 (1980).  Here,
the defendant raised the defense, and the judge properly
instructed the jury.  The defendant argues, however, that the
evidence was insufficient to prove, beyond a reasonable doubt,
that he did not act in proper self-defense.  In assessing the
defendant's sufficiency challenge, we again view the evidence in
the light most favorable to the Commonwealth to determine if the
prosecution disproved the defense, or, put another way, if the
evidence "was sufficient to persuade a rational trier of fact
that this burden was met."  Commonwealth v. McAfee, 430 Mass.
483, 496 (1999).

        We conclude that the evidence presented did not show that
the defendant was in imminent danger, nor did it show that he
attempted to retreat.  The defendant was told to "go screw"
after being pulled from the scrum that included the victim and
Billy.  Instead of retreating, and despite having no impediment
to leaving, the defendant struck the victim as the victim stood
nearby, looking around with his hands down by his sides.  The
victim was not threatening or engaged in a fight.  Based on
these facts, a reasonable juror could infer that the defendant
did not believe he was in imminent danger of death or bodily
harm and could conclude that the defendant did not "avail[]

                                  8

himself of all proper means to avoid physical combat." Harrington, 379 Mass. at 450. Moreover, the evidence that the victim's hands were down and that he was not engaged in any fighting at the time that he was struck by the defendant was sufficient for a reasonable juror to conclude that in delivering the fatal blow, the defendant used more force than was reasonably necessary in the circumstances. Id.

Judgment affirmed.

By the Court (Henry, Hand & Allen, JJ.[3]),

Paul Little

Clerk

Entered: May 1, 2026.

---

[3] The panelists are listed in order of seniority.